# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: Roman Catholic Church of the Archdiocese of Santa Fe, <br><br> Debtor-in-Possession. | Chapter 11 <br> Bankruptcy Case No. 18-13027-t11 |
| Official Committee of Unsecured Creditors, <br><br> Plaintiff, <br><br> v. <br><br> The Archdiocese of Santa Fe Real Estate Corporation, as Trustee of the Archdiocese of Santa Fe Real Estate Trust, Shrine of Our Lady of Guadalupe – Santa Fe, Santa Maria de La Paz Catholic Community, Immaculate Conception - Albuquerque, Nuestro Senora de Guadalupe – Taos, St. John the Baptist – Santa Fe, Cristo Rey Parish, Church of the Ascension, Our Lady of Belen, St. Jude Thaddeus, Nativity of the Blessed Virgin Mary, and the Roman Catholic Church of the Archdiocese of Santa Fe, <br><br> Defendants. | Adv. Proc. No. 20-01058 |
| Official Committee of Unsecured Creditors, <br><br> Plaintiff, <br><br> v. <br><br> The Roman Catholic Church of the Archdiocese 0f Santa Fe, Rev. Msgr. Lambert J. Luna, Rev. John Cannon, Rev. Timothy A. Martinez, Rev. Clarence Maes, Rev. John Trambley, Very Rev. James Marshall, Rev. Msgr. Bennett J. Voorhies, Tony Salgado, Jennifer Cantrell, Bernard E. "Gig" Brummell, and Stan Sluder, Solely in Their Capacity as Trustees of the Archdiocese of Santa Fe Deposit and Loan Fund, Nativity of the Bless Virgin Mary, Our Lady of the Annunciation, Our Lady of the Assumption – Albuquerque, Risen Savior Catholic Community, Our Lady of Belen, Immaculate Heart of Mary, San Clemente, St. John Vianney Church, St. Thomas Aquinas, and San Miguel, <br><br> Defendants. | Adv. Proc. No. 20-01061-t |

# MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR PARTIAL SUMMARY JUDGMENT REGARDING THE PARISHES' INABILITY TO BE TRUST BENEFICIARIES PRIOR TO INCORPORATION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKROUND ................................................................................... 3

III.  UNDISPUTED FACTS ......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 11

    A.    PRIOR TO THE RESTRUCTURING, THE PARISHES COULD NOT
        BE TRUST BENEFICIARIES BECAUSE THEY HAD NO LEGAL
        EXISTENCE SEPARATE FROM ASF. .......................................................... 11

    B.    PRIOR TO THE RESTRUCTURING, THE PARISHES COULD NOT
        BE TRUST BENEFICIARIES BASED ON STATUS AS ALLEGED
        UNINCORPORATED ASSOCIATIONS. ....................................................... 14

        1.    New Mexico Does Not Recognize Unincorporated Associations at
               Common Law .............................................................................................. 14

        2.    The Effect of New Mexico's Refusal to Recognize Unincorporated
               Associations at Common Law Is Explained in the Comments to the
               Revised Uniform Unincorporated Nonprofit Associations Act. .............. 14

    C.    NEW MEXICO'S UNINCORPORATED ASSOCIATIONS ACT
        APPLIES TO THE PARISHES. ...................................................................... 16

        1.    The Filing Requirement of the Unincorporated Associations Act Is
               Mandatory. .................................................................................................. 17

               a.    The *Blue Canyon* Court's Interpretation of the Statute is
                      Correct. ................................................................................................ 18

               b.    Authorities Fom Other States That Do Not Have a
                      Statutory Filing Requirement Are Inapposite. ............................. 21

        2.    The Parishes Were Capable of Filing Statements Pursuant to the
               Unincorporated Associations Act and Failed to Do So. ......................... 22

    D.    THE PARISHES' FAILURE TO COMPLY WITH THE NEW MEXICO
        UNINCORPORATED ASSOCIATIONS ACT RENDERED THEM
        INCAPABLE OF HOLDING BENEFICIAL INTERESTS IN
        PROPERTY AS TRUST BENEFICIARIES. ..................................................... 24

V.    CONCLUSION .................................................................................................... 26

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Akoury v. Roman Catholic Archbishop,*
  2004 Mass. Super. LEXIS 349 (Mass. Super. Sept. 14, 2004)................................. 13

*Albers v. Church of Nazarene,*
  698 F.2d 852 (7th Cir. 1983) ..................................................... 13

*Aragon v. Rio Costilla Co-Op Livestock Ass'n,*
  112 N.M. 152 (1991) .............................................................. 22

*Bassett v. Bassett,*
  110 N.M. 559 (1990) .............................................................. 22

*Blue Canyon Well Ass'n v. Jevne,*
  410 P. 3d 251 (N.M. App. 2017) ......................................... passim

*Comm. of Tort Litigants v. Catholic Diocese of Spokane*
  *(In re Catholic Diocese of Spokane),*
   364 B.R. 81 (E.D. Wash. 2006) ............................................. 22

*E.E.O.C. v. St. Francis Xavier Parochial Sch.,*
  77 F. Supp. 2d 71 (D.D.C. 1999)........................................... 13

*F.E.L. Publications, Ltd. v. Catholic Bishop,*
  754 F. 2d 216 (7th Cir. 1984) ................................................ 13

*Flanagan v. Benvie,*
  58 N.M. 525 (1954) ......................................................... passim

*Leslie v. Midgate Center, Inc.,*
  436 P. 2d 201 (Wash. 1967) ................................................... 21

*Mazer v. Jones (In re Jones),*
  184 B.R. 377 (Bankr. D.N.M. 1995) ...................................... 22

*Moffatt Tunnel League v. U.S.,*
  289 U.S. 113 (1933)......................................................... 14, 24

*Montoya v. Garcia (In re Garcia),*
  367 B.R. 778 (Bankr. D.N.M. 2007) ...................................... 22

*MTGLQ Investors, LP v. Wellington,*
  2021 U.S. App. LEXIS 376 at *8 n. 8 (10th Cir. Jan. 7, 2021) ............................. 18

*Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc.*
  *(In re Catholic Diocese of Wilmington, Inc.),*
  432 B.R. 135 (Bankr. D. Del. 2010) ......................................... 2

DOCS_SF:104936.5 05066/002

*State v. Johnson*,
    954 P.2d 79 (N.M. App. 1997) ....................................................................... 20

*Tort Claimants Comm. v. Roman Catholic Archbishop*
    *(In re Roman Catholic Archbishop of Portland in Oregon),*
    335 B.R. 842 (Bankr. D. Or. 2005) .......................................................... 12, 13

*U.S. ex rel. Ritchie v. Lockheed Martin Corp.,*
    558 F.3d 1161 (10th Cir. 2009) ................................................................... 12

*United States v. ITT Blackburn Co.*,
    824 F.2d 628 (8th Cir. 1987) ...................................................................... 11

*Western Beef, Inc. v. Compton Inv. Co.*,
    611 F.2d 587 (5th Cir. 1980) ...................................................................... 12

## STATUTES

N.M. Stat § 53-10-1 *et seq.* ......................................................................... passim

## OTHER AUTHORITIES

2 Scott & Ascher on Trusts, § 12.5 (5th ed. 2006) ..................................................... 13

Revised Uniform Unincorporated Nonprofit Associations Act (2011) .................................. 15, 16

DOCS_SF:104936.5 05066/002

**I.**

**INTRODUCTION**

The Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Church of the Archdiocese of Santa Fe ("ASF") brings this motion for partial summary judgment to narrow issues before the Court at the outset of litigation, substantially reduce the scope and costs of discovery, and increase the likelihood of settlement and a consensual plan.

The Defendants[1] assert as alleged affirmative defenses that the challenged fraudulent transfers to the Trusts were not made with property of the estate because the assets transferred "are not now and have never been owned by" ASF, that such assets were "at all times Parish assets," that no avoidable transfers occurred, and that "properties in question which relate to Santa Maria de la Paz never 'belonged' to the Archdiocese but were instead held in trust for the benefit of Santa Maria de la Paz." (Undisputed Fact ("UF") No. 5, *infra*).

By these affirmative defenses, Defendants contend that at the time ASF's assets were transferred to the Trusts, the assets were held in pre-existing equitable trusts for the benefit of the Parishes. The Defendants claim that the unincorporated Parishes had the legal capacity to be beneficiaries of the purported equitable trusts on two independent grounds: (i) the Parishes were unincorporated associations under New Mexico law; and (ii) the Parishes were "juridic" entities under ecclesiastical (canon) law. The first issue (i) is the subject of this motion. The affirmative defenses challenged by this motion fail as a matter of law because the unincorporated Parishes had no legal existence separate from ASF at the time of the transfers and were not capable of

---

[1] The Defendants are: ASF, the Archdiocese of Santa Fe Real Estate Corporation ("RE Corp."), as trustee of the Archdiocese of Santa Fe Real Estate Trust ("RE Trust"), the trustees of the Archdiocese of Santa Fe Deposit and Loan Fund (the "DLF Trust"), and certain representative parishes (the "Parishes").

DOCS_SF:104936.5 05066/002

being trust beneficiaries under New Mexico law. The second issue (ii), including Defendants' contention that this Court is required to apply ecclesiastical law, rather than neutral and generally applicable civil law, to determine the legal status of the unincorporated Parishes and whether ASF made avoidable fraudulent transfers of its assets, is addressed in the *Motion of the Official Committee of Unsecured Creditors for Partial Summary Judgment on Affirmative Defenses Based on (A) the Religious Freedom Restoration Act of 1993 (42 U.S.C. § 2000bb et seq.), (B) the Church Autonomy Doctrine, and (C) the First Amendment to the United States Constitution* ("Religious Liberty Defenses Motion"), filed concurrently herewith.

The essential question presented by this motion is purely a question of law: is the filing requirement in New Mexico Statute Annotated ("NMSA") Section 53-10-1 mandatory or permissive  If the Court finds, as it must, that the statutory filing requirement is mandatory, the unincorporated Parishes had no legal existence separate from ASF prior to their incorporation, the Parishes could not have been trust beneficiaries and the challenged transfers were of assets of the estate as a matter of law because it is undisputed that the transferred assets were titled to ASF and assets titled to the debtor are presumed to be property of the estate. [2]

Under New Mexico's rules of statutory construction, the "may file" provision in Section 53-10-1 is mandatory rather than permissive. Section 53-10-7 compels the conclusion that under Section 53-10-1, it is necessary to file a statement, articles, and any existing rules/regulations with the office of the county clerk in order to form a legally recognized unincorporated

---

[2] *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 161 n.93 (Bankr. D. Del. 2010) (property titled to the debtor "is presumptively property of the estate and it is the burden of any purported trust beneficiary to establish otherwise").

association capable of holding a property interest. It is undisputed that compliant statutory statements were never filed with the county clerks by the Parishes.

Whether the words of a statute are mandatory or discretionary is a matter of legislative intention to be determined by consideration of the purpose sought to be accomplished. Interpreting the filing provisions in NMSA Section 53-10-1 as discretionary makes the clause requiring filing in Section 53-10-7 meaningless, and a statute must be construed so that no part of the statute is surplusage or superfluous. Since, under New Mexico law, the Parishes were not legal entities separate from ASF prior to the Restructure and their formal incorporation, they could not have been beneficiaries of a pre-existing equitable trust when ASF transferred its real estate assets to the RE Trust and its financial assets to the DLF Trust. Therefore, ASF held both legal title to, and beneficial interests in, the transferred assets at the time of the challenged transfers.

## II.
## FACTUAL BACKROUND

In late 2007, in the face of escalating claims by childhood sexual abuse survivors, ASF began preparations for a corporate restructuring (the "Restructuring") that was intended to place over $266,000,000 of assets beyond the reach of its creditors, while ensuring that the Archbishop remained in control of the assets. Because ASF knew that its unincorporated Parishes had no legal existence separate from ASF under New Mexico law and could not be trust beneficiaries, the cornerstone of the Restructuring was the incorporation of ASF's previously unincorporated Parishes and the formation of two revocable self-settled trusts (the "Trusts") in which the Parishes were beneficiaries, controlled by the Archbishop: the "RE Trust" for the receipt of

3

ASF's real estate, and the "DLF Trust" for the receipt of financial assets. Between 2013 and 2018, ASF made massive transfers of assets to the RE Trust and the DLF Trust without consideration. As of the petition date of ASF's bankruptcy, the Parishes were separately incorporated, ASF's financial assets had been transferred to the DLF Trust, and most (but not all) of ASF's real estate had been transferred to the RE Trust.

On December 3, 2018 (the "Petition Date"), ASF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 18, 2018, the United States Trustee appointed the Committee to represent ASF's unsecured creditors. The Committee is comprised of persons appointed by the United States Trustee. [Bankr. Docket No. 53].

On May 29, 2020, the Committee filed a motion ("Standing Motion") for authority to commence, prosecute, and settle certain adversary proceedings on behalf of ASF's estate as set forth in three proposed complaints. [Bankr. Docket Nos. 383-84, 389]. On October 9, 2020, the Court entered an opinion and order, as amended ("Standing Order"), granting the Standing Motion and authorizing the committee to commence the adversary proceedings on behalf of the estate. [Bankr. Docket Nos. 514-15]. ASF and the Parishes have appealed the Standing Order to the Bankruptcy Appellate Panel for the Tenth Circuit. [Bankr. Docket Nos. 552-53]. The Bankruptcy Appellate Panel granted in part and denied in part a motion for direct appeal, certifying for direct appeal to the Tenth Circuit "the question of whether creditors and creditors' committees are permitted to bring derivative lawsuits to assert claims on behalf of the bankruptcy estate when a trustee or debtor in possession declines to do so." The Bankruptcy

Appellate Panel denied direct appeal of the religious liberty issues.[3] This Court denied a stay

pending appeal of the Standing Order. [Bankr. Docket Nos. 630-31].

Pursuant to the Standing Order, the Committee filed two complaints (detailed below, the

"Complaints") that seek to avoid fraudulent transfers made by ASF to the Trusts.[4] ASF

disclaims any interest in the assets held in the Trusts because such interest is allegedly held for

the benefit of the Parishes. The Defendants assert as affirmative defenses to the fraudulent

transfer claims, among other things, that prior to the challenged transfers, the assets were at all

times prior to the Restructuring, held in equitable trusts by ASF for the benefit of the Parishes

and no avoidable transfers occurred.

Pursuant to initial scheduling orders entered in the above-captioned adversary

proceedings on February 4, 2021, the Court has invited, but not required, the filing of this motion

for partial summary judgment relating to the Parishes' capacity to be trust beneficiaries, and

stayed all discovery between the parties pending further orders. The parties have stipulated to

consolidation of the adversary proceedings pursuant to Bankruptcy Rule 7042 and Federal Rule

of Civil Procedure 42(a)(1) for purposes of filing and resolution of this motion. [Adv. Proc. No.

20-ap-01058, Docket No. 22].

---

[3] BAP Case No. NM-20-052, *Order Granting in Part and Denying in Part Joint Motion for Certification of Direct Appeal* [Docket No. 45] entered Feb. 19, 2021, at p. 5.

[4] This motion applies only to the RE Trust and DLF Trust Complaints, not to claims to avoid unrecorded interests in real property pursuant to Bankruptcy Code section 544(a)(3) as alleged in a third complaint filed by the Committee.

5

**III.**
**UNDISPUTED FACTS**

**The Adversary Complaints and Affirmative Defenses**

1.     On October 16, 2020, pursuant to the Standing Order, the Committee filed the

"RE Trust Complaint" against Archdiocese of Santa Fe Real Estate Corporation ("RE Corp.") as

trustee of the RE Trust, ASF, and ten representative Parishes, commencing adversary proceeding

number 20-01058-t.  The RE Trust Complaint includes the following causes of action:

- First Claim for Relief: Avoidance and Recovery of RE Trust Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 544(b) and 550, N.M. Stat. § 56-10-18A(1);

- Second Claim for Relief: Avoidance and Recovery of RE Trust Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 544(b) and 550, N.M. Stat. § 56-10-18A(2);

- Third Claim for Relief: Avoidance and Recovery of RE Trust Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 544(b) and 550, N.M. Stat. § 56-10-19;

- Fourth Claim for Relief: Avoidance and Recovery of Incorporation Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 544(b) and 550, N.M. Stat. § 56-10-18A(1);

- Fifth Claim for Relief: Avoidance and Recovery of Incorporation Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 544(b) and 550, N.M. Stat. § 56-10-18A(2);

- Sixth Claim for Relief: Avoidance and Recovery of Incorporation Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 544(b) and 550, N.M. Stat. § 56-10-19;

- Seventh Claim for Relief: Avoidance and Recovery of RE Trust Transfers against RE Corp. and the Parishes pursuant to Bankr. Code §§ 548(e) and 550;

- Eighth Claim for Relief: Turnover of Assets in the RE Trust against RE Corp. and the Parishes pursuant to Bankr. Code §§ 541, 542, 544, and N.M. Stat. § 46A-5-505(A)(1);

- Ninth Claim for Relief: Turnover of Assets in the RE Trust against RE Corp. and the Parishes pursuant to Bankr. Code §§ 541, 542, 544, and N.M. Stat. § 46A-5-505(A)(2);

- Tenth Claim for Relief: Declaratory Relief that Assets in the RE Trust are property of ASF's Estate against all Defendants pursuant to Bankr. Code § § 541(a)(1), 544(a), and N.M. Stat. § 46A-5-505(A)(1) and (A)(2);

- Eleventh Claim for Relief: Injunctive Relief Compelling ASF to Revoke the RE Trust and Compelling RE Corp. as Trustee to Turn Over the Assets in the RE Trust pursuant to N.M. Stat. § 46A-6-603 and Bankr. Code § 541(a)(1); and

- Twelfth Claim for Relief: Declaratory Relief that the RE Trust is Void against all Defendants pursuant to Bankr. Code § 541(a)(1).

2.      On October 29, 2020, pursuant to the Standing Order, the Committee filed the "DLF Trust Complaint" against the trustees of the DLF Trust, ASF, and ten representative Parishes, commencing adversary proceeding number 20-01061-t. The DLF Trust Complaint is similar to the RE Trust Complaint and includes identical claims for relief with respect to the transfers of ASF's financial assets to the DLF Trust.

3.      On November 30, 2020, the Defendants filed answers to the Complaints, including a separate answer filed in response to the RE Trust Complaint by one of the Parish defendants, Santa Maria de La Paz Catholic Community ("Santa Maria de la Paz"), for a total of five answers ("Answers").[5]

4.      By their Answers, the Defendants raise the following affirmative defenses to the Complaints based on the alleged existence of pre-existing trusts in favor of the Parishes:

| **Affirmative Defense** | Defendant's Answer/Paragraph |
| --- | --- |

---

[5] Answers to the RE Trust Complaint [Adv. Proc. No. 20-ap-01058] were filed by ASF [Docket No. 15], the Parishes and RE Corp. [Docket No. 13], and Santa Maria de la Paz [Docket No. 14]; and Answers to the DLF Complaint [Adv. Proc. No. 20-ap-01061] were filed by ASF [Docket No. 8] and the Parishes and trustees of the DLF Trust [Docket No. 7].

| a.  Neither the Archbishop nor the Archdiocese is or ever has been the owner of parish property; the properties held in the RE Trust [D&L Trust] are not now and have never been properties owned by the Archdiocese and therefore the causes of action in the Complaint fail, thereby barring relief prayed for in the Complaint. | ASF Answer to RE Trust Complaint, ¶ 6.<br><br>Parish Answer to RE Trust Complaint, ¶ 6<br><br>Parish Answer to DLF Trust Complaint, ¶ 6 (substituting bracketed language). |
| --- | --- |
| b.  The Archdiocese did not transfer any Archdiocese assets into the RE Trust [D&L Trust]; all assets subject to the RE Trust [D&L Trust] were at all times Parish assets, and there are no transfers that are subject to avoidance. | ASF Answer to RE Trust Complaint, ¶ 11.<br><br>Parish Answer to RE Trust Complaint, ¶ 16.<br><br>ASF Answer to DLF Trust Complaint, ¶ 13 (substituting bracketed language).<br><br>Parish Answer to DLF Trust Complaint, ¶ 16 (without bracketed language; sic). |
| c.  The properties in question which relate to Santa Maria de La Paz never "belonged" to the Archdiocese but were instead held in trust for the benefit of Santa Maria de La Paz. | Santa Maria de La Paz Answer to RE Trust Complaint, ¶ 2. |

**Incorporation of the Parishes and Creation of the Trusts**

5.      The Parishes submitted a *Notice of Filing Declarations and Exhibits* [Bankr.

Docket No. 417] in opposition to the Standing Motion, including declarations filed by eight

pastors, describing the history and membership of their Parishes.  According to the declarations,

the following Parishes[6] were founded on the dates specified below:

| Parish | Founding Date | Declarant |
| --- | --- | --- |
| San Isidro | 1975 | Very Rev. John D. Cannon, ¶ 6 |
| San Martin de Porres | August 15, 1979 | Very Rev. Oscar W. Coelho, ¶ 6 |

---

[6] Not all of the Parishes are named defendants in the Complaints.  San Clemente is a defendant of the DLF Trust Complaint; and Cristo Rey Parish is a defendant of the RE Trust Complaint.

| St. Joseph on the Rio Grande | September 1, 1986 | Rev. Msgr. Lambert Joseph Luna, ¶ 7 |
| --- | --- | --- |
| San Clemente | 1961 | Very Rev. James Marshall, ¶ 3 |
| Cristo Rey Parish | 1939 | Rev. Timothy Martinez, ¶ 12 |
| San Felipe de Neri | 1706 | Rev. Andrew J. Pavlak, ¶ 3 |
| Our Lady of Fatima Parish | 1949 | Very Rev. Stephen Carl Schultz, ¶ 3 |
| Our Lady of Sorrows Parish | 1852 | Very Rev. George Robert Yaksich, ¶ 3 |

6.     In or about May 2009, ASF prepared a PowerPoint presentation entitled, "Parish Incorporation."  A slide entitled, "Advantages of Incorporation," described the Parishes at that time as unincorporated associations, with no independent legal status, and no recognized identity under civil law.  *See* Declaration of Kenneth Brown filed herewith at Exhibit A (PowerPoint presentation) and Exhibit B at ¶ 11 (Salgado Declaration; preparation of PowerPoint prior to Restructuring).[7]

7.     Prior to approximately January 1, 2013, the Parishes were not incorporated. Parish Answer to RE Trust Complaint, ¶ 1.  Beginning in 2012 and by January 1, 2013, ASF began to incorporate its Parishes under New Mexico law as part of the Restructuring.  ASF Answer to RE Trust Complaint, ¶ 1.

8.     The New Mexico Secretary of State maintains a website (https://www.sos. state.nm.us/online-services/) with publicly available information regarding corporations formed in New Mexico.  The incorporation dates of the Parishes are as follows:

| Parish Defendant | Incorp. Date |
| --- | --- |

---

[7] Exhibits A and B attached to the Brown Declaration are provided for the Court's convenience and were previously filed at Bankr. Docket Nos. 389 and 420, respectively.

DOCS_SF:104936.5 05066/002

| RE Trust Complaint | |
|---|---|
| 1.   Shrine of Our Lady of Guadalupe – Santa Fe | 04/18/2013 |
| 2.   Santa Maria de La Paz Catholic Community | 11/06/2012 |
| 3.   Immaculate Conception – Albuquerque | 11/26/2012 |
| 4.   Nuestra Senora de Guadalupe – Taos | 12/17/2012 |
| 5.   St. John the Baptist – Santa Fe | 11/06/2012 |
| 6.   Cristo Rey Parish | 11/06/2012 |
| 7.   Church of the Ascension | 11/26/2012 |
| 8.   Our Lady of Belen | 12/03/2012 |
| 9.   St. Jude Thaddeus | 12/03/2012 |
| 10. Nativity of the Blessed Virgin Mary | 11/26/2012 |
| **DLF Trust Complaint** | |
| 11. Nativity of the Blessed Virgin Mary | 11/26/2012 |
| 12. Our Lady of the Annunciation | 11/26/2012 |
| 13. Our Lady of the Assumption – Albuquerque | 11/26/2012 |
| 14. Risen Savior Catholic Community | 11/26/2012 |
| 15. Our Lady of Belen | 12/03/2012 |
| 16. Immaculate Heart of Mary | 12/07/2012 |
| 17. San Clemente | 12/07/2012 |
| 18. St. John Vianney Church | 07/11/2013 |
| 19. St. Thomas Aquinas | 12/10/2012 |
| 20. San Miguel | 12/17/2012 |

9.      On January 1, 2013, ASF created the RE Trust.  Parish Answer to RE Trust

Complaint, ¶ 17 ("The Parishes admit that effective as of January 1, 2013, the Archdiocese

created the RE Trust."); ASF Answer to RE Trust Complaint, ¶ 17 ("[T]he Archdiocese states that it established the RE Trust as an irrevocable charitable trust effective as of January 1, 2013"); Santa Maria de La Paz Answer to RE Trust Complaint, ¶ 17 (without sufficient information to admit or deny).

10.    The Indenture of Trust for the DLF Trust became effective or about January 1, 2013.  Parish Answer to DLF Trust Complaint, ¶ 5; ASF Answer to DLF Trust Complaint, ¶ 5.

11.    The Parishes do not contend that they filed statements with the county clerks to be recognized as unincorporated associations in New Mexico.  *See* Parishes' Opposition to Standing Motion [Bankr. Docket No. 416] at pp. 13, 15 ("The statute does not apply to Parishes . . . However, if the Parishes are deemed unincorporated associations under the statute, the plain language of NM ST § 53-10-1 provides for a permissive, rather than mandatory, filing requirement.").

## IV.
## ARGUMENT

**A.    PRIOR TO THE RESTRUCTURING, THE PARISHES COULD NOT BE TRUST BENEFICIARIES BECAUSE THEY HAD NO LEGAL EXISTENCE SEPARATE FROM ASF.**

The Defendants contend that prior to the Restructuring, the unincorporated Parishes were the beneficiaries of pre-existing equitable trusts in which ASF, as trustee, held bare legal title for the Parishes' benefit.  The equitable trust theory fails because the Parishes were not legal entities separate from ASF prior to their incorporation and were, instead, comparable to an unincorporated division of ASF subject to oversight by the archbishop.

A division of a corporation is not a legal entity separate from the corporation. *See, e.g., United States v. ITT Blackburn Co.*, 824 F.2d 628, 631 (8th Cir. 1987) ("an unincorporated division cannot be sued or indicted, as it is not a legal entity") (citations omitted); *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 591 (5th Cir. 1980) ("'A division of a corporation is not a separate legal entity but is the corporation itself.'") (quoting *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978)); *U.S. ex rel. Ritchie v. Lockheed Martin Corp.,* 558 F.3d 1161, 1163 n.1 (10th Cir. 2009) (unincorporated division was not separate entity from the corporation).

In *Portland,* the bankruptcy court rejected arguments by the archdiocese that its unincorporated parishes were trust beneficiaries capable of holding assets separate from the debtor based on their historic status as juridic entities under canon law. *Tort Claimants Comm. v. Roman Catholic Archbishop (In re Roman Catholic Archbishop of Portland in Oregon),* 335 B.R. 842, 865-68 (Bankr. D. Or. 2005). The *Portland* court reasoned that the parishes were not legal entities under applicable state law and were not sufficiently separate from the debtor to be trust beneficiaries:

> In fact, unincorporated religious associations are not legal persons that may take title to real property in their names. [Citations]. **Because the parishes are not separately incorporated, as they could be under Oregon religious corporations law, they cannot hold title to real property. They are not separate from, but are merely a part of the debtor.**
>
> *      *      *
>
> There is no authority to which the parties direct me or of which I am aware, . . . that would allow a division of a corporation or a unit or part of a legal entity to be a beneficiary of a trust. It is one thing to hold that an independent unincorporated association has the capacity to be the beneficiary of a trust. It is quite another to hold

that a corporation can hold property in trust for a unit or part of itself.

*Id.* at 866, 867 (emphasis added). *See* 2 Scott & Ascher on Trusts, § 12.5 (5th ed. 2006) ("[O]ne who does not have capacity to take and hold legal title to property ordinarily lacks capacity to be a trust beneficiary;" citing *Portland*).

Many other courts have also held that a Catholic diocese's unincorporated parishes are not legal entities separate from the diocese. *See, e.g., F.E.L. Publications, Ltd. v. Catholic Bishop,* 754 F. 2d 216, 221 (7th Cir. 1984) ("[T]he parishes within the Archdiocese are not legal entities separate and independent from the Catholic Bishop, but are subsumed within the Catholic Bishop."); *E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 77 F. Supp. 2d 71, 75-76 (D.D.C. 1999) (finding school and parish were part of larger diocese; "Because neither defendant is separately incorporated, defendants are in fact unincorporated divisions of a corporation. As such, their presence in this case triggers a line of precedent holding that unincorporated divisions of a corporation lack legal capacity to be sued."); *Akoury v. Roman Catholic Archbishop,* 2004 Mass. Super. LEXIS 349 at *6-7 (Mass. Super. Sept. 14, 2004) ("Saint Albert the Great's Church and Parish (including its real estate and its personalty) is an unincorporated subdivision of the Archdiocese of Boston."). Likewise, a daycare center operated by a church is not a separate entity for purposes of liability. *Albers v. Church of Nazarene,* 698 F.2d 852, 857 (7th Cir. 1983) ("An unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part.").

Prior to the Restructuring, the Parishes were not separate legal entities from ASF with capacity to be trust beneficiaries.

13

B. **PRIOR TO THE RESTRUCTURING, THE PARISHES COULD NOT BE TRUST BENEFICIARIES BASED ON STATUS AS ALLEGED UNINCORPORATED ASSOCIATIONS.**

1. **New Mexico Does Not Recognize Unincorporated Associations at Common Law.**

The Parishes argue that they have always operated "separately under Archdiocese supervision." Parishes' Opposition to Standing Motion, p. 7. Even if this is true, the Parishes could not be trust beneficiaries under New Mexico law.

New Mexico does not recognize common law unincorporated associations and such associations have no legal existence unless expressly recognized by statute. *Flanagan v. Benvie,* 58 N.M. 525, 529 (1954) (citing *Moffatt Tunnel League v. U.S.,* 289 U.S. 113, 119 (1933)). In *Flanagan,* the New Mexico Supreme Court held that "[u]nincorporated associations, clubs and societies, unless recognized by statute, have no legal existence, and ordinarily are legally incapable in their associate name of taking and holding either real or personal property." *Id.* The *Flanagan* court found that a rifle club's failure to organize in accordance with the statute governing voluntary associations precluded it from availing itself of the rights conferred by the statute to hold property in the name of the association. Accordingly, the court held that where an association fails to organize in compliance with the statute, it cannot be recognized as a separate legal entity. *Id.* at 531 (complaint by returning club member dismissed).

2. **The Effect of New Mexico's Refusal to Recognize Unincorporated Associations at Common Law Is Explained in the Comments to the Revised Uniform Unincorporated Nonprofit Associations Act.**

There is no consistent nationwide approach to the formation and recognition of unincorporated associations. The prefatory note to Revised Uniform Unincorporated Nonprofit

14

Associations Act ("Uniform Act")[8] describes the "hodgepodge of common law principles and statutes governing some of their legal aspects."  The note observes that "(m)any of the existing statutes are designed to ameliorate some of the legal problems that arise from the basic common law concept that UNAs [unincorporated nonprofit associations] are merely aggregates of individuals and not legal entities.  Under the traditional common law aggregate theory, for example, a UNA could not hold or convey property in its own name or sue or be sued in its own name."  Uniform Act, Prefatory Note (2011).  The Uniform Act, **where adopted** "applies to all nonprofit associations, whether they are classified as religious, public benefit, or mutual benefit, or whether they are classified as tax exempt."  *Id.*

While the provisions of the Uniform Act allow for the formation of unincorporated nonprofit associations without filing, **New Mexico has not adopted it and instead follows NMSA Sections 53-10-1 et seq.**  By declining to adopt the Uniform Act, New Mexico limits the recognition of an unincorporated association as specified in the statute.

The Uniform Act and commentary explain the repercussions of a state's failure to adopt the Uniform Act and non-recognition of unincorporated associations under common law. Section 6 of the Uniform Act,  titled "Ownership and Transfer of Property," provides:

> (a)  An unincorporated nonprofit association may acquire, hold, or transfer in its name an interest in property.

> (b)  An unincorporated nonprofit association may be a beneficiary of a trust or contract, a legatee, or a devisee.

The comment to Section 6,  subsection (a) states:

---

[8]  A true copy of the Uniform Act (2011)  is attached as Exhibit C to the Declaration of Kenneth Brown for the Court's reference.

Subsection (a) is based on Section 3-102(8) of the Uniform Common Interest Ownership Act. ***It reverses the common law rule. Inasmuch as an unincorporated nonprofit association was not a legal entity at common law, it could not acquire, hold, or convey real or personal property.*** (Emphasis added).

Additional comments to the Uniform Act make clear that an unincorporated association is not recognized at common law as a legal entity that can acquire an interest in property and that the transfer of a real or personal property interest to an unincorporated association thus fails. *See, e.g.,* Uniform Act, Section 30 and Comment (purported transfer that did not vest prior to Act, vests upon effective date; "Inasmuch as the common law did not consider a nonprofit association to be a legal entity, it could not acquire property. A gift of real or personal property thus failed. Reference to the transfer as 'purportedly' made identifies the document of transfer as one not effective under the law.").

## C.    NEW MEXICO'S UNINCORPORATED ASSOCIATIONS ACT APPLIES TO THE PARISHES.

In New Mexico, unincorporated associations are not recognized as legal entities capable of holding property interests unless a written statement is filed with the county clerk pursuant to NMSA Sections 53-10-1 *et seq.* (the "New Mexico Unincorporated Associations Act").

NMSA Section 53-10-1, authorizing the formation of unincorporated associations, states:

[Purposes of organization; filing statement, articles of association and rules and regulations with county clerk.]

**Whenever two or more persons shall desire to form an association** for the promotion of their mutual pleasure or recreation of any hunting, fishing, camping, golf, country club, or association for a similar purpose, or an association not for the individual profit of the members thereof, and without incorporating the same as a corporation, or maintaining the title of its property in trust for the interest of its several members as they may exist from

16

time to time, **the said persons or members desiring to form such an association or club may file in the office of the county clerk** of the county in which it may maintain its headquarters and pursue its objects and purposes, **a statement** containing the name of such association, its objects and purposes, the names and residences of the persons forming such association, **together with a copy of its articles of association and any rules and/or regulations** governing the transactions of its objects and purposes and prescribing the terms by which its members may maintain or cease their membership therein.

(Emphasis added). Unincorporated associations that comply with the statutory provisions may hold and acquire real and personal property interests pursuant to NMSA Section 53-10-2.

The express terms of the New Mexico Unincorporated Associations Act apply to "an association not for the individual profit of the members thereof." The fact that the Parishes are religious or charitable in nature is irrelevant because the New Mexico Unincorporated Associations Act does not make distinctions on this basis or set forth any exemption. *Blue Canyon Well Ass'n v. Jevne,* 410 P. 3d 251, 255 (N.M. App. 2017) is the sole authority interpreting NMSA Section 53-10-1, and it holds that the statute broadly applies to all unincorporated associations.

1.     **The Filing Requirement of the Unincorporated Associations Act Is Mandatory.**

In order to have legal capacity to acquire and hold property interests, an association must file a statement with the county clerk in accordance with the New Mexico Unincorporated Associations Act. *Blue Canyon Well Ass'n,* 410 P. 3d at 254 ("For those intending to create an association under Section 53-10-1, **the filing of documents in mandatory**.") (Emphasis added).

In *Blue Canyon Well Ass'n,* an association of well-owners sued a former member for past due bills and obtained a judgment in the trial court. On appeal, the court considered whether

17

(i) unincorporated associations are recognized by common law in New Mexico; and (ii) the filing of a statement with the county clerk to be legally recognized as an unincorporated association was permissive or mandatory.  The appellate court held (i) that in *Flanagan* the New Mexico Supreme Court long ago and "unequivocally held" that unincorporated associations are not recognized by common law in New Mexico and have no legal existence unless recognized by statute; and (ii) the filing of the statutory statement is mandatory based on the language of the statute and because a permissive interpretation would expressly conflict with other provisions of the Act.  *Id.* at 254-55.

### a.  The *Blue Canyon* Court's Interpretation of the Statute is Correct.

The Parishes have previously argued in opposition to the Standing Motion that *Blue Canyon* was incorrectly decided.[9]  It was not.  *See MTGLQ Investors, LP v. Wellington,* 2021 U.S. App. LEXIS 376 at *8 n. 8 (10th Cir. Jan. 7, 2021) (citing *Blue Canyon* with approval as "explaining that unincorporated associations have no legal existence and may not bring suit unless they comply with certain statutory requirements").

NMSA Section 53-10-7 compels the conclusion that under Section 53-10-1, the filing of a statement, articles, and any existing rules/regulations in the office of the county clerk in order to form a legally recognized unincorporated association is mandatory.  NMSA Section 53-10-7 provides:  "Any association or club formed under the provisions of this act may exist for such period of time not exceeding twenty years as may be fixed in ***the statement required to be filed by Section 1 of this act.***"  (Emphasis added).

---

[9] Parish Opposition to Standing Motion [Bankr. Docket No. 416] at 15.

DOCS_SF:104936.5 05066/002

The *Blue Canyon* court considered and rejected the argument that the language of Section

53-10-1 is permissive rather than mandatory:

> We acknowledge, and the parties are quick to point out, that
> generally, the words "shall" and "must" express a "duty,
> obligation, requirement or condition precedent" while "may"
> confers a "power, authority, privilege or right."  NMSA 1978, §
> 12-2A-4(A), (B) (1997).  However, in this instance, the power,
> authority, privilege or right signaled by the use of the word "may"
> in the statute is not the power, authority, privilege, or right to file
> documents.  Instead, it is the right to form an association as
> opposed to a corporation, trust, or other legally viable entity.  The
> plain language of Section 53-10-1 clearly sets out that whenever
> two or more persons wish to form an association for the limited
> purposes described therein without incorporating or maintaining
> title to its property in trust, then those persons may do so by filing
> statutory documents with the county clerk.  ***For those intending to
> create an association under Section 53-10-1, the filing of
> statutory documents is mandatory.***

*Blue Canyon Well Ass'n,* 410 P. 3d at 254 (emphasis added).

The *Blue Canyon* court concluded that multiple other sections of the New Mexico

Unincorporated Association Act confirm that the statutory document filing is mandatory,

including Section 53-10-7, which refers to "the statement required to be filed by Section [53-10-

1]," as discussed above.[10]  *Blue Canyon* properly declined the invitation to interpret Section 53-

---

[10]  The remaining sections of the New Mexico Unincorporated Associations Act emphasize that filing articles of association is required to form an unincorporated association, and that those articles govern the legal status of the association.  Section 53-10-2. describes how the "club or association may hold and acquire real or personal property by deed, lease or otherwise, in the name of such association by which it is known."  Section 53-10-3 describes the process for the mortgaging or sale of any "property, real, personal or leasehold interest therein of any such club or association."  Section 53-10-4. sets forth the process for and effect of establishing rules and regulations for the club and association.  Section 53-10-5. establishes a club or association's right to "sue or be sued in its name" as well as its right to sue individual members.  Section 53-10-6. states that "an unincorporated association may sue or be sued in its common name for the purpose of enforcing for or against it any substantive right."  Section 53-10-7. describes the maximum term of existence for an unincorporated "association or club formed under the provisions of this act," as well as the dissolution or winding up process and the distribution of proceeds of property.  Finally, the language of Section 53-10-8. confirms legislative intent in placing regulations for unincorporated associations within the laws governing corporations because the "act [NMSA 53-10-1 through 53-10-8] shall not be construed to repeal or modify any of the present laws of this state relative to corporations formed or [for] any purpose, but the same shall

19

10-1 so that the "required to be filed" language is merely surplusage. The court relied on well-settled principals of statutory construction: "We interpret statutes 'to avoid rendering the Legislature's language superfluous.' We consider all parts of the statute together, 'read[ing] the statute in its entirety and constru[ing] each part in connection with every other part to produce a harmonious whole.'" *Blue Canyon Well Ass'n*, 410 P.3d at 253 (quoting *Baker v. Hedstrom*, 309 P.3d 1047, 1053 (N.M. 2013) and *Key v. Chrysler Motors Corp.*, 918 P.2d 350, 355 (N.M. 1996)).

In *Blue Canyon*, the Court recognized that legislative intent and purpose can only be gleaned by examining the entire act, reading each of Sections 53-10-1 through 53-10-8 in relation to the other. The language of the entire act demonstrates that the legislature intended the filing provision in Section 53-10-1. to be mandatory rather than permissive. *Blue Canyon Well Ass'n,* 410 P. 3d at 254. Interpreting the filing provisions in Section 53-10-1 as discretionary makes the clause requiring filing in Section 53-10-7, as well as its attendant 20-year maximum life, meaningless. *Id.; see also State v. Johnson*, 954 P.2d 79, 85 (N.M. App. 1997) ("We have always rejected an interpretation of a statute that would make parts of it mere surplusage or meaningless.").

In addition, NMSA Sections 53-10-1 through 53-10-8 are compiled in Chapter 53, Article 10, governing Corporations, and any unincorporated association formed under this act must be expected to follow all of its provisions. That the statute regulating unincorporated associations is

be construed as supplementary thereto." This statutory savings clause is consistent with and confirms the New Mexico Supreme Court's holding in *Flanagan v. Benvie*, 58 N.M. 525, 531 (1954) , that unincorporated associations have no legal existence unless recognized by statute.

20

found among the provisions governing Corporations presupposes a higher level of organization and formalities. Under the New Mexico Unincorporated Associations Act, to be trust beneficiaries prior to the Restructuring, the Parishes were required to file a compliant statement with the county clerk to have the legal capacity to hold or acquire property interests, including as beneficiaries of a purported equitable trust.

### b. Authorities Fom Other States That Do Not Have a Statutory Filing Requirement Are Inapposite.

Defendants have previously argued that unincorporated Parishes that have not satisfied the mandatory filing requirement of the statute can still be recognized as unincorporated associations and be trust beneficiaries in New Mexico,[11] but Defendants are unable to cite a single New Mexico authority to support this misstatement of law and no such authority exists. Defendants' reliance on generalized language in the Restatement of Trusts that unincorporated associations may be trust beneficiaries are misplaced. The language in the Restatement does not contemplate the filing requirement of NMSA Section 53-10-1 or explicit contrary New Mexico authority. *See, e.g., Flanagan* and *Blue Canyon, supra* (no legal existence unless recognized by statute).

ASF also relies on two cases applying the law of the state Washington to support its argument that, prior to incorporation, the Parishes could be trust beneficiaries as unincorporated associations without complying with New Mexico's mandatory filing requirement: *Leslie v. Midgate Center, Inc.,* 436 P. 2d 201, 205 (Wash. 1967) and *Comm. of Tort Litigants v. Catholic*

---

[11] *See* Parish Opposition to Standing Motion [Bankr. Docket No. 416] at 9-12; ASF Opposition to Standing Motion [Bankr. Docket No. 418] at 44-46.

*Diocese of Spokane (In re Catholic Diocese of Spokane),* 364 B.R. 81, 91 (E.D. Wash. 2006)

(citing *Leslie*).[12]  These decisions are inapposite because the state law they were decided under

has no filing requirement for recognizing unincorporated associations as legal entities with rights

to hold property interests.  Washington, unlike New Mexico, has not enacted a statute that

governs the recognition of unincorporated associations.

The Parishes argue that New Mexico would recognize an equitable trust relationship

based on inapposite authority that does not involve unincorporated associations (or divisions of a

corporation).[13]  The issue before the Court is not whether New Mexico recognizes resulting and

constructive trusts, but whether New Mexico recognizes the capacity of an alleged

unincorporated association in the absence of statutory authorization to hold property as a trust

beneficiary.

### 2. The Parishes Were Capable of Filing Statements Pursuant to the Unincorporated Associations Act and Failed to Do So.

ASF has also argued that application of the New Mexico Unincorporated Associations

Act to the Parishes would be "nonsensical" and filing documents would be "impossible" because

the Parishes did not have members prior to incorporation.[14]  Not only is this irrelevant to the

issue of whether the mandatory filing requirement was met, it is demonstrably false.  Whether or

---

[12] ASF Opposition to Standing Motion [Bankr. Docket No. 418], at 45-46.

[13] Parish Opposition to Standing Motion [Bankr. Docket No. 416], at 9-10.  *See, e.g., Montoya v. Garcia (In re Garcia),* 367 B.R. 778, 781 (Bankr. D.N.M. 2007) (resulting trust held by debtor children in favor of parents); *Aragon v. Rio Costilla Co-Op Livestock Ass'n,* 112 N.M. 152, 156 (1991) ("legal entity incorporated under the laws of the State of New Mexico" and created at the direction of government lender held legal and beneficial interests to land; no resulting trust); *Bassett v. Bassett,* 110 N.M. 559, 566 (1990) (resulting trust held by partner in favor of partnership); *Mazer v. Jones (In re Jones),* 184 B.R. 377, 382 (Bankr. D.N.M. 1995) (no resulting trust held by debtor in favor of children; real property was property of debtors' estate).

[14] ASF Opposition to Standing Motion, at 42-43.

not the Parishes had members, the parish pastor or the Archbishop (among others) could easily have filed the requisite statement with the county clerk but simply failed to do so.

The filing requirement of NMSA Section 53-10-1 is "abbreviated" (*Blue Canyon Well Ass'n,* 410 P. 3d at 254) and far less complex than that of incorporating. The unincorporated association need only file a statement containing: the name of the association and its purpose, the names of the persons forming the association, and a copy of its articles of association and any rules and/or regulations governing its purposes and the terms by which members maintain or cease their membership. NMSA § 53-10-1.

The Parishes filed numerous declarations by parish pastors in opposition to the Standing Motion that purport to describe, among other matters, the formation, operation, and independence of the Parishes prior to their incorporation. *See, e.g.,* Bankr. Docket Nos. 417, 441. The requisite statutory statement required far less of the pastors. Each pastor has described a precise number of registered families that comprise the Parish and when it was established as a parish. *See, e.g., Declaration of Very Rev. John C. Cannon* [Docket No. 417-1], ¶ 7 (San Isidro parish has 1,002 registered families); *Declaration of Very Rev. Lambert Oscar W. Coelho* [Bankr. Docket No. 417-2], ¶¶ 5-6 (San Martin de Porres parish has 1,719 registered families, and mission became a parish on August 15, 1979). *See also* UF No. 5. Each Parish maintained books and records prior to incorporation and was fully capable of registering as an unincorporated association if it chose to do so, just as the Parishes were capable of and did incorporate as part of the Restructuring and transfer of ASF's real property to the RE Trust.

D.   **THE PARISHES' FAILURE TO COMPLY WITH THE NEW MEXICO UNINCORPORATED ASSOCIATIONS ACT RENDERED THEM INCAPABLE OF HOLDING BENEFICIAL INTERESTS IN PROPERTY AS TRUST BENEFICIARIES.**

The Parishes' failure to file a required statement under the New Mexico Unincorporated

Associations Act means that prior to incorporation they had no cognizable legal existence

separate from ASF under New Mexico law and were not capable of holding interests in property.

As a matter of law, the Parishes could not be trust beneficiaries prior to the Restructuring

because they had no separate legal existence.

As discussed above, unincorporated associations have no legal existence and cannot hold

property interests or acquire property at common law.  Statutory authorization is required.  *See*

*Moffatt Tunnel League v. U.S., supra,* 289 U.S. at 119 (unincorporated voluntary association

lacked capacity to sue absent authorization by statute); *Flanagan v. Benvie,*  58 N.M. at 529

(same; unincorporated association lacked capacity to take or hold property).  New Mexico

enacted the Unincorporated Associations Act to avoid some of the burdens associated with the

formation of a corporation or trust, while allowing the benefits of acting as a common

association with limitations on liability and the right to hold interests in property, "*provided* [the

unincorporated associations] satisfy its abbreviated requirements."  *Blue Canyon Well Ass'n v.*

*Jevne,* 410 P. 3d at 254 (emphasis added).  Accordingly, in the absence of NMSA Sections 53-

10-1 *et seq.*—and compliance with its provisions—the Parishes had no separate legal existence

prior to incorporation.

Prior to approximately January 1, 2013, the Parishes were unincorporated.  UF Nos. 7-8.

Under *Flanagan,*  the Parishes had no legal existence prior to their incorporation except to the

24

extent recognized by statute. ASF has acknowledged that the unincorporated Parishes had no independent legal status and no recognized identity under civil law. UF No. 6. The Parishes failed to comply with New Mexico's statutory requirement to file statements with the county recorder. UF No. 11. Therefore, they could not hold property interests as alleged equitable trust beneficiaries. Since New Mexico does not recognize unincorporated associations at common law, failure to comply with the mandatory statutory filing requirements is fatal to Defendants' contention that they could be trust beneficiaries as unincorporated associations.

The fact that the Parishes may be "juridic" entities under canon law, may have acted independently, or may have held themselves out as independent prior to their incorporation is irrelevant under the terms of the New Mexico Unincorporated Associations Act. Absent the required filing, the unincorporated Parishes were not entitled to recognition as legal entities separate from ASF or their parishioners, and were not capable of holding property interests, including as trust beneficiaries under New Mexico law. To hold otherwise would render the statute meaningless.

Therefore, both the legal and beneficial ownership of real property and personal property titled to ASF was vested in ASF until the properties were transferred to the Trusts as part of the Restructure and accompanying incorporation of the Parishes. *See* UF Nos. 7-10 (Parish incorporation; Trusts created effective January 1, 2013). Defendants' affirmative defenses that the beneficial interests in the transferred assets were held by the Parishes (or the assets were owned outright by the Parishes) prior to the transfers to the Trusts, and therefore property of the estate was not transferred to the Trusts, fail under New Mexico law. *See* UF Nos. 4a, 4b, 4c.

# V.
## <u>CONCLUSION</u>

For the foregoing reasons, the Committee requests that the Court enter partial summary

judgment dismissing Defendants' affirmative defenses set forth at UF No. 4(a)-(c).

Dated: March 5, 2021

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Kenneth H. Brown*
      James I. Stang
      Kenneth H. Brown
      Gail S. Greenwood
      150 California Street
      San Francisco, CA  94111
      Tel: 415-263-7000
      Fax: 415-263-7010
      jstang@pszjlaw.com
      kbrown@pszjlaw.com
      ggreenwood@pszjlaw.com

      Counsel for the Official Committee of
      Unsecured Creditors